**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | ) | |
|---|---|---|
| JOHN NEW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06 C 0017 |
| | ) | |
| THOMAS MONAHAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, a civil detainee in the custody of the Illinois Department of Human Services, is facing commitment pursuant to the Sexually Violent Persons Commitment Act. The plaintiff has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, DHS employees and contractors, have violated the plaintiff's constitutional rights by: (1) denying him equal protection (treating detainees who have signed a consent-to-treatment form more favorably than those who refuse treatment); (2) subjecting him to inhumane conditions of confinement; and (3) acting with deliberate indifference to his serious medical needs (refusing to treat his arthritis adequately and disregarding universal health care procedures relating to dispensation of medication). This matter is before the court for consideration of the various defendants' motions to dismiss. For the reasons stated in this order, the motions are granted in part and denied in part.

**I. STANDARD OF REVIEW ON A MOTION TO DISMISS**

It is well established that *pro se* complaints are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972), *reh'g denied*, 405 U.S. 948 (1972); *see also McCormick v. City of*

*Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). They can be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines*, 404 U.S. at 521; *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000). Fact pleading is not necessary to state a claim for relief. *Thompson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004). To satisfy the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), the plaintiff need only state his legal claim and provide "some indication . . . of time and place." *Id.* at 971.

When considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court takes the allegations in the complaint as true, viewing all facts–as well as any inferences reasonably drawn therefrom–in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). Dismissal should be denied whenever it appears that a basis for federal jurisdiction in fact exists or may exist and can be stated by the plaintiff. *Norfleet v. Vale*, No. 05 C 0926, 2005 WL 3299375, at *1 (N.D. Ill. Dec. 5, 2005) (Zagel, J.). The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Weiler v. Household Finance Corp.*, 101 F.3d 519, 524 n. 1 (7th Cir. 1996) (citations omitted).

## II. FACTS

The plaintiff is a civil detainee either committed or facing commitment as a "sexually violent person" pursuant to 725 ILCS § 207/5. Under that statute, a sexually violent person is someone who has been convicted of a sexually violent offense (or has been found not guilty of a sexually violent offense by reason of insanity) and "who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence."

*Id.*, § 207/5(f). The plaintiff was held at the Joliet Treatment and Detention Facility [hereinafter, "TDF"] from March 7, 2005, until June 19, 2006, when he was transferred along with all other detainees to the new facility in Rushville, Illinois.

The defendants in the case are: (1) Thomas Monahan, an employee of the Illinois Department of Human Services [hereinafter, "DHS"], whose position is not identified in the complaint; (2) Steve Strock, a DHS Security Therapy Aide with the title of Executive II; (3) Shan Jumper, the Clinical Director of the TDF; (4) Lea Chankin, the Associate Clinical Director of the TDF; (5) Liberty Healthcare, a DHS contractor and employer of Jumper and Chankin; (6) Carol Vance, a TDF facility hospital administrator; (7) Dr. Jovita Anyanwu, a TDF resident physician; and (8) Addus Healthcare, Inc., a DHS contractor and employer of Vance and Anyanwu.

The plaintiff alleges the following, basic facts, which must be accepted as true for purposes of the defendants' motions: In Count One, the plaintiff charges that it is the policy of the DHS and Liberty Health Care to treat those detainees who sign a form consenting to treatment differently from those who refuse to sign the consent form. The plaintiff maintains that he will not sign the consent form because he is unwilling to concede that he is a sexually violent person. As a result of refusing to sign the form, the plaintiff is [or was][1] subjected to conditions he characterizes as "punishment." Challenged conditions include: certain food restrictions (e.g., no ice cream or soft drinks); assignment to a cell in the older part of the facility (which was overcrowded and pest-infested, had defective plumbing, poor ventilation and insulation, was dirty and shabby, and was equipped with a steel double bunk bed and sink but no writing desk or chair); the denial of privileges such as being

---

[1] The record does not indicate whether the plaintiff is subject to the same constraints and conditions at the new facility in Rushville.

permitted to receive food in the mail from his family year-round, receiving telephone calls from his family and friends, and attending vocational or educational programs. The plaintiff further maintains that it is in the interests of Liberty Healthcare and Addus HealthCare to write false behavior reports to justify their lucrative contracts to treat persons adjudicated as sexually violent.

In Count Two, the plaintiff claims that he has been denied adequate treatment for his painful, chronic arthritis. He asserts that he has been denied an electric heating pad to relieve his pain and that he has not been permitted to see a neurologist. He also contends that sloppy and unsanitary practices of the medical staff affect the quality of his medical care.

In addition, the plaintiff alleges that the defendant Vance and the nurses she supervises write false behavior reports to retaliate against inmates who complain about the health care staff's non-observation of universal health care safeguards.

## III. ANALYSIS

### A. Pleading Deficiencies

The defendants Vance, Anyanwu, and Addus Healthcare, Inc., have filed a motion to dismiss the complaint for failure to comply with Fed. R. Civ. P. 8(e)(1), which requires that pleadings be "simple, concise, and direct," as well as Fed. R. Civ. P. 10(b), which requires that each claim be stated in separate, numbered paragraphs. Their motion is denied.

As noted *supra*, the court must construe *pro se* complaints liberally. *Haines v. Kerner*, 404 U.S. at 520. "Usually [plaintiffs] need do no more than narrate a grievance simply and directly, so that the defendant knows what he has been accused of." *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005). The complaint at bar does just that–it is easy to tell what the plaintiff is complaining about. The plaintiff, who drafted his complaint apparently using the court's civil rights complaint form as

his model, will not be held to the technical requirements of the Federal Rules of Civil Procedure. The motion to dismiss filed by Vance, Anyanwu and Addus Healthcare, Inc., on the basis of inartful pleading is denied.

**B. Failure to State a Claim**

All of the defendants have moved to dismiss the complaint for failure to state a claim. Their motions are granted in part and denied in part.

**1. Inferior Treatment**

The plaintiff claims that he is denied certain privileges and amenities because he has refused to sign a form agreeing to participate in the sex offender treatment program; those inmates who agree to treatment receive preferential treatment. The defendants' motion to dismiss this claim is granted.

In *Hargett v. Adams*, No. 02 C 1456, 2005 WL 399300 (N.D. Ill. Jan. 14, 2005), a sweeping class action lawsuit brought by the American Civil Liberties Union relating to the treatment of sexually violent committees, Judge Leinenweber of this court found in favor of the treatment program on identical claims. Following a trial, Judge Leinenweber concluded that it was proper to base the receipt of privileges on "participation in treatment" and good behavior. Judge Leinenweber ruled:

> The use of a variety of statuses within the TDF that correspond with privileges, including room location, increased freedom of movement, and access to certain commissary items, is not atypical of institutional and quasi-correctional settings. There are rational security concerns underlying the decision to have all patients initially begin at a lower end of the privilege continuum: in many instances, the staff do not initially know the potential risks of a new patient. In addition, making privileges contingent on good behavior and participation in treatment, creates positive contingencies and reinforcements for productive therapeutic behavior.

*Hargett*, 2005 WL 399300 at *8.

Pursuant to *Hargett*, Judge Lefkow of this district has recently dismissed a plaintiff's claim that he was subject to "retaliation" in the form of greatly reduced amenities for refusing to sign a consent-to-treatment form: "[B]ecause the plaintiff has not signed up for the treatment program, he is not entitled to the same privileges, including better housing, as those residents who have agreed to treatment. Because this issue has already been addressed and decided in *Hargett*, the plaintiff's claim . . . is dismissed." *See Williams v. Monahan*, No. 06 C 2447 (N.D. Ill.), Minute Order of June 30, 2006, at p. 2.

In short, because the plaintiff refuses to sign up the treatment program, he is not entitled to the same privileges and amenities as those detainees who have agreed to undergo treatment. This court agrees with the rulings made by Judges Leinenweber and Lefkow and adopts their shared conclusion that the preferential treatment of those who agree to treatment does not violate the Equal Protection Clause.

**2. Conditions of Confinement**

As discussed more fully in the preceding section, the denial of certain privileges and amenities because the plaintiff has refused treatment implicates neither the Due Process nor the Equal Protection clause. Furthermore, the plaintiff's placement in a less desirable housing unit did not violate his constitutional rights. In *McKune v. Lile*, 536 U.S. 24 (2002), the Supreme Court held that the use of incentives to procure consent to treatment in a prison-based program was constitutional. Recognizing that it was necessary to devise an incentive system so that residents would consent to treatment, the Court stated:

> [T]he limitation on these rights is incidental to Kansas' legitimate penological reason for the transfer: Due to limited space, inmates who do not participate in their respective programs will be moved out of the facility where the programs are held to make room for other inmates. As the Secretary of Corrections has explained, "it

> makes no sense to have someone who's not participating in a program taking up a bed in a setting where someone else who may be willing to participate in a program could occupy that bed and participate in a program."

536 U.S. at 38-39. Therefore, the plaintiff's assignment to a different area of the facility from those who have agreed to participate in the sex offender treatment program did not violate his constitutional rights.

Nevertheless, the plaintiff describes conditions that may, in and of themselves, have violated his constitutional right to non-punitive conditions of confinement. The Constitution requires the defendants to house the plaintiff under "humane conditions" and to provide him with "adequate food, clothing, shelter, and medical care." *Sain v. Budz*, No. 05 C 6394, 2006 WL 539351, *2 (N.D. Mar. 3, 2006) (Conlon, J.), *citing Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Like a pretrial detainee, a sexually violent person may not be subjected to conditions that amount to "punishment" without due process. *See, e.g., Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004).

According to the plaintiff, his housing unit was roach-infested, inadequately heated during the winter months, overcrowded, and the drinking water was "foul and discolored gray." These allegations are sufficient to state a cause of action under 42 U.S.C. § 1983. *See e.g.*, *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (allegations of low temperatures and pest infestation were actionable under the Civil Rights Act); *Dixon v. Godinez*, 1154 F.3d 640, 646 (7th Cir. 1997) (common problems may rise to the level of a constitutional violation if they exist for a prolonged period); *Wellman v. Faulkner*, 715 F.2d 269, 274-75 (7th Cir. 1983) (overcrowding may rise to constitutional concern where the situation engenders undue violence, sanitary and maintenance problems, and psychological suffering). Of course, in order to survive a summary judgment motion,

the plaintiff will have to provide proof of his claims. But at this stage of the proceedings, the plaintiff has articulated colorable claims.

### 3. Deliberate Indifference to the Plaintiff's Serious Medical Needs

Prison officials may not act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Detainees awaiting trial are similarly afforded *Estelle*-like protection against medical mistreatment under the Due Process Clause. *Holmes v. Sheahan*, 930 F.2d 1196, 1199 (7th Cir. 1991). "To cast this notion in the language of tort, the [State or] County has an affirmative duty to provide persons in its custody with a medical care system that meets minimal standards of adequacy." *Holmes*, 930 F.2d at 1199 (citations omitted). The subjective element of deliberate indifference encompasses conduct such as the refusal to treat a prisoner's chronic pain, *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999), the refusal to provide pain medication prescribed by doctor, *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999), or erroneous treatment based on a substantial departure from accepted medical judgment, practice, or standards. *Sherrod*, 223 F.3d at 611; *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

In this case, the court will assume for purposes of the motion that the plaintiff's arthritic condition is "serious" for purposes of constitutional analysis. *See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (a "serious" medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention). The plaintiff alleges that the health care staff was deliberately sloppy and that the substandard care he received aggravated his arthritis. The fact that a prisoner received **some** medical treatment does not necessarily defeat his claim; deliberate indifference to a serious medical need can be manifested by "blatantly inappropriate" treatment, *Greeno v. Daley*,

414 F.3d 645, 654 (7th Cir. 2005) (emphasis in original), or by "woefully inadequate action"as well as by no action at all. *Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999). The plaintiff may also further develop his claim that the medical care system at the TDF was so deficient as to violate his constitutional rights.

Again, in order to defeat a motion for summary judgment, the plaintiff will have to substantiate his claims. It should be noted that neither medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference. *Estelle*, 429 U.S. at 106; *Greeno*, 414 F.3d at 653. Nevertheless, it is not the case that the plaintiff could prove "no set of facts" entitling him to relief. *Haines v. Kerner*, 404 U.S. 519, 521 (1972), *reh'g denied*, 405 U.S. 948 (1972). The court cannot, on the basis of the undeveloped record, conclude that the plaintiff received adequate medical care while housed at the Joliet Treatment and Detention Facility.

**4. Retaliation**

In his complaint, the plaintiff alleges in passing that the defendants issued false conduct reports against detainees who filed grievances regarding the conditions at the Joliet Treatment and Detention Facility. It is well established that prison officials violate the Constitution when they retaliate against a prisoner for filing grievances or initiating lawsuits. *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002). However, in their motions to dismiss, the defendants assert that the plaintiff lacks standing to sue for retaliation because he has failed to allege that he personally ever received a false report. As the plaintiff has not responded to this argument, the court will deem the matter uncontested. The plaintiff's one-sentence retaliation claim is consequently dismissed for lack of standing. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983).

### 5. Personal Involvement

The defendants contend that the plaintiff has failed to state a cause of action against "upper level officials." It is true that liability under 42 U.S.C. § 1983 requires a defendant's direct, personal involvement. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). The doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001). To be held liable under 42 U.S.C. § 1983, supervisors "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Id.*

Nevertheless, *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1996), teaches that dismissal of a *pro se* complaint on grounds of lack of active personal involvement is inappropriate where the official's position justifies an inference that the official had some direct involvement in the alleged violation. *Antonelli* concerned broad claims of unconstitutional conditions of confinement. In that case, the court found that an inference of involvement was justified to sustain claims asserted against certain senior officials, such as the county sheriff or the prison warden, where the claims alleged "potentially systemic," rather than "clearly localized," constitutional violations. *Id.* at 1428-29. In the case at bar, the plaintiff's claims clearly focus on non-localized, systemic violations--he takes issue with the general treatment of inmates who refused to sign consent forms, as well as the general

provision of medical care. The defendants' motion to dismiss is denied on grounds of lack of personal involvement.

### 5. Qualified Immunity

The defendants' motion to dismiss on grounds of qualified immunity is likewise denied. "[A] complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Alvarado v. Litscher*, 267 F.3d 648, 651-52 (2001), *citing Jacobs v. City of Chicago*, 215 F.3d 758, 765 n. 3 (7th Cir. 2000). "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal. . . ." *Id.* The defendants may wish to renew their affirmative defense of qualified immunity in a properly supported motion for summary judgment.

### 5. Mootness of Claims for Injunctive Relief

It would seem that some or all of the plaintiff's claims for injunctive relief may have been mooted by his transfer to the new facility in Rushville. Certainly, he is no longer subject to the conditions of confinement presented in the old wing at the Joliet Treatment and Detention Facility. If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to return to that prison. *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996). However, as mootness was raised in the one of the defendants' reply briefs, the plaintiff has not had the opportunity to brief that issue. Therefore, the court will not at this time address the issue of mootness.

### **CONCLUSION**

In view of the foregoing, the defendants' respective motions to dismiss are granted only as to two claims: (1) the plaintiff's claim that detainees who sign the consent-to-treatment forms

receive preferential treatment; and (2) the plaintiff's retaliation claim. The defendants' motions to dismiss are denied in all other respects.

IT IS THEREFORE ORDERED THAT the motion to supplement filed by defendants Vance, Anyanwu and Addus Health Care [#36] is granted. The defendants' respective motions to dismiss the complaint for failure to state a claim [document numbers 18, 28 and 32] are granted in part and denied in part. The plaintiff's claims of retaliation and preferential treatment are dismissed pursuant to Fed. R. Civ. P. 12(b)(6). The plaintiff may proceed on all other claims. The defendants are directed to answer or otherwise plead within twenty-one days of the date of this order.

**ENTER:**

_____/s/_____
**JOAN B. GOTTSCHALL**
**United States District Judge**

**DATED:** October 3, 2006